IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RUMPKE ROAD DEVELOPMENT CORP., *et al.*, | : | Case No. 1:98-cv-92 |
| | : | Judge Susan J. Dlott |
| Plaintiffs, | : | |
| | : | **ORDER DENYING JOINT MOTION TO AMEND AND DENYING MOTION TO INTERVENE AS MOOT** |
| v. | : | |
| | : | |
| UNION TOWNSHIP, CLERMONT COUNTY, OHIO, *et al.*, | : | |
| | : | |
| Defendants. | : | |

This matter is before the Court for consideration of two motions: (1) the Joint Motion to Amend the Settlement Plan Attached to the Agreed Judgment Entry and Consent Decree Dated June 26, 2000 ("Joint Motion to Amend") (Doc. 41) filed by Plaintiff Anthony M. Sansalone[1] and Defendants Union Township, Union Township Board of Trustees, and Union Township Board of Zoning Appeals; and (2) the Motion to Intervene (Doc. 46) filed by the Cincinnati Nature Center, Committee to Protect Avey's Way, Mark Lutz, Robb Wing, Maria Keri, and Anne Robinson (collectively "Intervenors"). For the reasons that follow, the Joint Motion to Amend the Settlement Plan (Doc. 41) will be **DENIED**, and the Motion to Intervene (Doc. 46) will be **DENIED AS MOOT**.

---

[1] Anthony M. Sansalone is the sole remaining Plaintiff in this case. Rumpke Road Development Corporation, one of the original Plaintiffs, was dissolved in 2001. Sansalone is its successor-in-interest. (Doc. 37 and Doc. 41 at PageID 1, n. 1.) (PageID numbers are not available for those documents filed before the Court converted from paper files to an electronic filing system in 2003.) In 2009, Sansalone transferred the property at issue to his wife, "Keke" Sansalone. (A. Sansalone Aff., Doc. 41-2 at PageID 12.) Keke Sansalone is named as a Defendant in the related state court action pending in the Clermont County Court of Common Pleas, *Cincinnati Nature Center v. Union Township*, Case No. 2018 CVH 01675. (*Id.*)

1

## I. BACKGROUND

### A. Facts

This case involves a 21-year-old dispute over efforts to develop approximately 271 acres of real property in Clermont County, Ohio located between Interstate 275, Old State Route 74, and the Cincinnati Nature Center. (Doc. 41 at PageID 3; Doc. 41-4 at PageID 32.) In 1998, Rumpke Road Development Corporation and eight individual property owners initiated this action challenging the zoning restrictions applicable to the property as unconstitutional. (Doc. 1.)

According to the original Plaintiffs, the Defendants zoned the subject real estate "R-1" single family detached residential structure zone and "S-1" special zone (with regulations identical to those applicable to "A-1" agricultural conservation zones). (Doc. 1, ¶¶ 12–14.) According to the Complaint, "A-1" zoning regulations allow only farm and agricultural uses, single family dwellings on lots of at least two acres, forest and wildlife preservation, and other specific uses inconsistent with the development Plaintiffs proposed in 1998. (*Id.* at ¶ 15.)

In 2000, the parties stipulated that Anthony Sansalone, Trustee—as the new title holder to the property at issue—should be substituted for the original Plaintiffs in this case, leaving only Rumpke Road Development Corporation and Anthony Sansalone, Trustee as Plaintiffs. (Doc. 37.) The case caption changed at that time to reflect the new ownership. (Doc. 39.)

On June 26, 2000, the parties entered into—and the Court approved—an Agreed Judgment Entry and Consent Decree ("Consent Decree") resolving the litigation. (Doc. 40.) The Consent Decree, provides:

> WHEREAS, Plaintiff is desirous of developing the subject real estate as a planned **single family detached housing residential community** and is willing to submit the development thereof to

> certain restrictions set forth herein which Defendant believes to be in the best interest of Union Township;
>
> * * *
>
> 6. Defendant hereby authorizes, and Plaintiff is hereby authorized, to develop and use the subject real estate as a **single family detached housing residential community**, recreational facilities, and open space, as provided herein.
>
> 7. The development and use of the subject real estate shall be consistent with the intent and purpose of the following documents, which have been stipulated to by the parties and are incorporated herein by reference:
>
> * * *
>
> (B) Exhibit "B," the Settlement Plan containing the following elements: (1) **Not more than 575 detached units may be developed on the subject real estate** [with minimum lot size and square footage requirements].
>
> * * *
>
> 14. Any changes, amendments, or revisions to the terms and provisions hereof shall be in writing and shall be subject to the approval of both Plaintiff and Defendant, neither or whom shall unreasonably withhold its consent.
>
> * * *
>
> 17. **Nothing herein shall affect or impair Defendant's right to zone or rezone property, to amend its zoning text or zoning map, or to bind future elected officials of Union Township with respect to the zoning of the property.** Notwithstanding the foregoing, Plaintiff's right to develop the subject real estate in accordance with the provisions hereof, including the Settlement Plan, Exhibit "B" hereto, are deemed vested, and no further reviews or approvals by Defendant shall be required for Plaintiff to complete the development of the subject real estate as proposed herein.

(Doc. 40 at p. 2 and ¶¶ 6, 7, 14, and 17 (emphasis added).)

On June 26, 2000, the Court approved the Consent Decree and closed the case. The development to which the parties agreed in 2000 was never built, and the Court heard nothing on this matter for nearly 19 years. (Doc. 41-1 at PageID 12.)

Meanwhile, in 2014, Fischer Homes proposed a new development of the property, but abandoned the plan "[u]pon meeting opposition from the public." (J. McBride Decision, Doc. 46-1 at PageID 85.) In 2017, Fischer Homes proposed another new development plan for the

3

property, the Miller Place development plan. (*Id.* at PageID 85–86.) The Miller Place plan permits, among other things, construction of 1,445 residential units, including 875 multi-family residential units. (Doc. 41-3 at PageID 19.)

Neighboring property owners (including the Cincinnati Nature Center) and other interested parties objected to the Miller Place plan. "The concerns were numerous and included concerns about the septic system, loss in property value, roadway congestion, environmental matters, and more." (Doc. 46-1 at PageID 85.)

Although residents submitted a petition to the Union Township Board of Trustees opposing the Miller Place plan, the Board of Trustees passed Resolution 2018-52 approving the Miller Place plan on October 25, 2018. (*Id.* at PageID 86.) The Board of Trustees allegedly approved the Miller Place plan without formal presentations to the public or the Board of Trustees and without a formal public hearing. (*Id.*)

The Cincinnati Nature Center and others initiated an action in the Clermont County Court of Common Pleas on November 27, 2018, alleging that: (1) Resolution 2018-52 approving the Miller Place plan violated Union Township zoning laws and the Consent Decree in this case; (2) the Board of Trustees improperly modified the Consent Decree to substitute the Miller Place plan for the original settlement plan; (3) the Board of Trustees effectively changed the zoning applicable to the property without following the procedures established by Ohio Revised Code § 519.12[2]; (4) the Board of Trustees' actions violated the First, Fifth, and Fourteenth Amendments to the United States Constitution; and (5) the Board of Trustees' actions violated Section 6, Article VII and Section 19, Article I of the Ohio Constitution (relating to use of eminent domain

---

[2] Ohio Revised Code § 519.12 describes the procedures that must be followed to amend zoning resolutions or rezone property in Ohio townships.

for the benefit of a private developer).  (Doc. 46-1 at PageID 86–87.)  The Defendants moved to dismiss the state court action.  On March 14, 2019, Clermont County Court of Common Pleas Judge Jerry R. McBride dismissed some of the claims for lack of standing, but permitted the Cincinnati Nature Center to proceed on its claims that the Board of Trustees—by approving the Miller Place plan allegedly without complying with Ohio Revised Code § 519.12—violated Union Township zoning laws, effectively changed the zoning applicable to the property without following the procedures established by Ohio Revised Code § 519.12, and violated the United States Constitution and Ohio Constitution.  (Doc. 46-1 at PageID 121.)

On May 23, 2019, the parties in this action filed the instant Joint Motion to Amend.  (Doc. 41).  In the Joint Motion to Amend, the parties seek leave to amend the Consent Decree by replacing the original settlement plan (attached to the Consent Decree as Exhibit B) with the new Miller Place plan (attached to the Joint Motion to Amend as Exhibit B-1).  "In all other respects, the Consent Decree will remain unchanged."  (Doc. 41 at PageID 8.)

The parties allege that, in 2018, they "took steps to modify [the Consent Decree] by amending the settlement plan attached to it."  (Doc. 41 at PageID 4.)  However, none of these "steps" were presented to this Court, nor was the Court aware of the purported amendment until the Joint Motion to Amend was filed.

On June 21, 2019, the Cincinnati Nature Center and other purported Intervenors—most of whom are also Plaintiffs in the state court action—filed a Motion to Intervene in this action.  (Doc. 46.)  Specifically, the Intervenors allege that they have a significant interest in the real property at issue in this case, that the proposed amendment to the Consent Decree will impede the Intervenors' ability to protect their constitutional rights, and that the existing parties to this

5

action do not adequately represent the Intervenors' interest regarding the issues presented here. (*Id.* at PageID 68.)

### B. Procedural Posture

The original Plaintiffs initiated this action on January 29, 1998, alleging that the zoning regulations applied to the real property at issue violated their constitutional rights. The parties entered into—and the Court approved—an Agreed Judgment Entry and Consent Decree in 2000, resolving this litigation. While litigation proceeds in state court involving the same parcel of land, the parties filed a Joint Motion to Amend asking this Court to amend the Consent Decree to remove the original settlement plan (permitting up to 575 single family units) and substitute the Miller Place plan (permitting up to 1,445 residential units, including 875 multi-family units) but otherwise leave the Consent Decree unchanged. (Doc. 41.) The Cincinnati Nature Center and other interested parties involved in the state court litigation filed a Motion to Intervene in this action. (Doc. 46.) The Intervenors—if permitted to intervene—seek to oppose the Joint Motion to Amend. Both the Plaintiffs and the Defendants in this action oppose the Intervenors' Motion to Intervene. (Docs. 47, 49.)

## II. APPLICABLE LEGAL STANDARD

"A consent judgment is a hybrid of a contract and a judicial act." *Universal Settlements Int'l, Inc. v. Nat'l Viatical, Inc.*, 568 F. App'x 398, 404 (6th Cir. 2014). "It mirrors a contract in that it reflects 'an agreement by the parties,' and it is a judicial act because it 'places the power and prestige of the court behind the compromise struck by the parties.'" *Id.* (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). "In fact, '[o]nce approved, the prospective provisions of a consent decree operate as an injunction.'" *Waste Mgmt. of Ohio, Inc. v. City of*

*Dayton*, 132 F.3d 1142, 1145 (6th Cir. 1997) (quoting *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1018 (6th Cir. 1994)).

As the Sixth Circuit Court of Appeals has recognized, "this injunctive quality requires courts to: '1) retain jurisdiction over the decree during the term of its existence; 2) protect the integrity of the decree with its contempt powers; and 3) modify the decree should "changed circumstances" subvert its intended purpose.'" *Id.* at 1145–46 (quoting *Williams*, 720 F.2d at 920 (citations omitted)). "Courts, therefore, have a duty to enforce, interpret, modify, and terminate their consent decrees as required by circumstance." *McGoldrick v. Bradstreet*, No. 2:08-cv-1, 2019 WL 3491266, at *6 (S.D. Ohio August 1, 2019) (quoting *Waste Mgmt. of Ohio, Inc.*, 132 F.3d at 1146) (footnote omitted).

Federal Rule of Civil Procedure 60(b) governs relief from final judgments or orders. Pursuant to Rule 60(b)(5), a Court may relieve parties from compliance with a consent decree where "applying it prospectively is no longer equitable." A consent decree that resolves a constitutional challenge to a development plan "by allowing construction with limitations" is "a prototypical example" of the consent decrees to which Rule 60(b)(5) applies. *Keepseagle v. Vilsack*, 118 F.Supp. 3d 98, 124 (D.D.C. 2015) (citing *Northridge Church*, 647 F.3d at 613).

A. **"Changed Circumstances" Do Not Justify Modification in This Case**

"Modification of a consent judgment is appropriate if: (1) 'changed factual conditions make compliance with the decree substantially more onerous'; (2) 'a decree proves to be unworkable because of unforeseen obstacles'; or (3) 'enforcement of the decree without modification would be detrimental to the public interest.'" *Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 615–16 (6th Cir. 2011) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)); *see also Northeast Ohio Coalition for the Homeless v. Husted*, 696

7

F.3d 580, 603 (6th Cir. 2012) ("In addition to a 'significant change in circumstances,' the moving party must show that the consent decree is 'onerous,' 'unworkable,' or 'detrimental to the public interest.'"). "This rule[3] does not allow modification simply 'when it is no longer *convenient* to live with the terms of a consent decree.'" *Northridge Church*, 647 F.3d at 613–14 (quoting *Rufo*, 502 U.S. at 383–84) (footnote added).

In the case at bar, the parties contend that "changed circumstances necessitate the amendment" of the Consent Decree. (Doc. 41 at PageID 5.) Citing only the affidavit of Plaintiff Anthony Sansalone, the parties allege that changing market conditions resulted in home prices peaking "around 2006," and then falling rapidly, "resulting in a decline of home ownership and increase in demand for apartments, multi-family homes, and smaller lots." (*Id.* at PageID 6.) Even if the Court were willing to accept Sansalone's unsupported statement that changing market conditions constitute a significant change in circumstances, the parties utterly fail to address several factors crucial to modification, including: (1) why the original settlement plan (permitting construction of up to 575 single family units) was not executed between 2000 and 2006;[4] (2) how compliance with the original settlement plan is now onerous, unworkable, or detrimental to the public interest; (3) how amending the consent decree to include the Miller Place plan would make the consent decree less onerous, unworkable, or detrimental to the public interest; and (4) why, if the changes around 2006 were so significant, the parties waited until 2019 to request the necessary modification. Accordingly, the Court concludes that the parties have failed to "satisfy a heavy burden to convince [the Court] that [they] agreed to the decree in

---

[3] The Rule to which the Court refers is Federal Rule of Civil Procedure 60(b)(5).
[4] "To allow a party to escape a consent judgment based on *its own voluntary actions* strikes us as unjustified." *Northridge Church*, 647 F.3d at 618.

good faith, made a reasonable effort to comply with the decree and should be relieved of the undertaking under Rule 60(b)." *Northridge Church*, 647 F.3d at 616 (quoting *Rufo*, 502 U.S. at 385). As in *Northridge Church*, the parties' "request strikes us as a plea for a 'do over,' and we decline the invitation." 647 F.3d at 619.

### B. The Requested Modification is Inconsistent with the Terms of the Consent Decree

The parties next rely upon the Consent Decree itself to justify the requested modification. Specifically, the parties contend—based on the language of paragraph 14—that they can agree to modify the Consent Decree to replace the agreed upon settlement plan (permitting up to 575 single family residences) with the completely different Miller Place plan (allowing up to 1,445 units, including 875 multi-family units), and the Consent Decree "will remain unchanged" in all other respects. (Doc. 41 at PageID 8.) The Court disagrees for several reasons.

First, "Even when consent decrees explicitly provide instructions for their own modification, Rule 60(b) governs." *Northeast Ohio Coalition for the Homeless*, 696 F.3d at 602; *see also Cleveland Firefighters for Fair Hiring Practices v. City of Cleveland*, 669 F.3d 737, 741 (6th Cir. 2012) ("[A] district court is not merely an instrument of a consent decree or of the parties' stipulations with respect to it.") In this case, the parties obviously recognize the Court's continuing jurisdiction as they moved this Court to modify the Consent Decree rather than just declaring it modified themselves. (Doc. 41.)

Second, the Consent Decree will not remain otherwise unchanged if the Court grants the modification requested. The Consent Decree is replete with plain language restricting it to approval of a specific number of single-family residential dwellings. (Doc. 40 at p. 2 and ¶¶ 3, 4, 5, 6, 7(B)(1), 7(B)(2).) Exchanging Exhibit B (the settlement plan) for proposed Exhibit B-1

9

(the Miller Place plan) would render the vast majority of the Consent Decree meaningless and conflict with the plain language of these paragraphs.

Third, as Judge McBride properly concluded in the state court litigation, Consent Decree paragraph 17 explicitly provides, "Nothing herein shall affect or impair Defendant's right to zone or rezone property, to amend its zoning text or zoning map, or to bind future elected officials of Union Township with respect to the zoning of the property." (Doc. 46-1 at PageID 113.) "Paragraph 17 would have no meaning or effect if, as the defendants argue, the Consent Decree itself rezoned the Property [from single family to multi-family]." (*Id.*) The Consent Decree merely frees Plaintiffs from "certain limitations on lot area, lot width and setbacks contained in the 'R-1' Single Family Detached Residential Structure Zone and 'ER' Estate Residential District zoning regulations," it does not remove the "R-1" and "ER" zoning designations applicable to the property. (Doc. 40 at ¶ 4.) To rezone the property for multi-family or other uses inconsistent with "R-1" and "ER" zoning regulations, the Defendants must comply with Chapter 519 of the Ohio Revised Code, as the Consent Decree recognizes. (Doc. 40 at ¶¶ 2, 17.)

Finally, even if the parties had made a serious attempt to establish legally significant "changed circumstances" and even if the language of the Consent Decree supported the modification requested, the timing of the request gives the Court pause. The Consent Decree was entered June 26, 2000, but the property was never developed. (Doc. 41-2 at PageID 12.) In 2014, Fischer Homes proposed a new development of the property, but abandoned it "[u]pon meeting opposition from the public." (Doc. 46-1 at PageID 85.) In 2017, Fischer Homes proposed another new development plan, the Miller Place plan. (Doc. 41-2 at PageID 13.) Again, residents opposed the plan, submitting a petition in opposition to the Union Township Board of Trustees, yet the Board of Trustees passed Resolution 2018-52 adopting the Miller

Place plan anyway. (Doc. 46-1 at PageID 86; Resolution 2018-52, Doc. 41-4 at PageID 32–35.) The Board of Trustees allegedly did so without complying with Ohio Revised Code § 519.12. (Doc. 46-1 at PageID 114–18.) The Cincinnati Nature Center and others challenged the Defendants' actions in state court as violative of § 519.12, the Ohio Constitution, and the United States Constitution. (Doc. 46-1.) The Defendants attempted to have the state court action dismissed, but failed. (*Id.*) Approximately two months later, the parties filed the Join Motion to Amend. (Doc. 41.) It was the first this Court had heard on the matter in nearly 19 years. A more cynical Court might conclude that the Joint Motion to Amend is little more than an attempt to push through an unpopular and allegedly illegal development plan without complying with the safeguards Ohio law provides to it citizens. However, the Court chooses to give the parties the benefit of the doubt and simply deny the Joint Motion to Amend.

## III. CONCLUSION

For the foregoing reasons, the Parties' Joint Motion to Amend (Doc. 41) is hereby **DENIED**. The Motion to Intervene (Doc. 46) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated: August 12, 2019      S/Susan J. Dlott_____
                                                      Judge Susan J. Dlott
                                                     United States District Court